By the Court—Bosworth, Ch. J.
This action was commenced on or about the 21st of Movember, 1857. It is brought against the defendant as the maker of a note dated July 5, 1854, for the sum of $1,980, payable sixty days after its date to the order of Thompson, Skillman & Company, and by them indorsed.
The defense set up in the answer is, that the note was made without consideration, to accommodate one Ralph Pomeroy, and that after it became due and payable, it was “fully paid and satisfied to the said plaintiffs by the said Ralph Pomeroy, before the commencement of this suit.”
The action was tried in May, 1859, before Mr. Justice Slossoh, and a jury. The defendant obtained a verdict in his favor, and from the judgment entered on it, and from an order denying a motion for a new trial, the plaintiffs appealed to the General Term.
The plaintiffs insist that the evidence admitted to- show payment was erroneously admitted, because the answer did not contain any allegations as to the particular facts thus proved and relied upon as amounting to a payment; and that an answer of the general form of the one interposed in this suit, will only permit evidence of a cash payment.
*188 Van Gieson v. Van Gieson, (12 Barb., 520, and which, was affirmed by the Court of Appeals, 16 N. Y. R., 304,) does not favor this view.
If the particulars of the transaction between Pomeroy and the plaintiffs were not sufficiently disclosed by the answer, the plaintiffs’ remedy was a motion under section 160 of the Code. They could not accept the plea and go to trial upon it, and there interpose the objection for the first time, that it was not sufficiently descriptive of the particulars relied upon as constituting payment. (Seeley v. Engell, 3 Kern., 548, [II.])
If the note was made for the accommodation of Pomeroy, or of the firm of Thompson, Skillman & Company, of which he was a member, and if the Bank held this note and others as collateral security merely, for debts owing to it by Pomeroy; and if there was an executed agreement between him and the plaintiffs by which they agreed to take lumber at prices designated in payment of his indebtedness and of the collaterals held by them, and that Pomeroy might specify the collaterals to which the payments should apply, and if he designated this note as one to be deemed paid after sufficient lumber had been delivered and accepted to satisfy it; then from the time of such designation the note is in fact paid not only as between Pomeroy and the plaintiffs, but as between the defendant and the plaintiffs.
Although Pomeroy, while he testified that this note was made for the .accommodation of himself or of his firm, also testified that the firm’s note was given in exchange for it, yet, throughout the trial, it seems to be assumed, as a fact proved, that the note was an accommodation note. Ho objection was taken to the admission of any evidence offered, nor was any request to charge based on the pretense that the noté was not an accommodation note. I think, therefore, that in examining the exceptions taken, we should consider that there is no question that such is the character of the note.
There can be no question that the only claim of the bank upon the notes it had received from Pomeroy or his firm, (including the one in suit,) was as. security for his and their debts.
There was no controversy that all the lumber delivered by Pomeroy under the agreement of the 12th of May, 1855, and the agreement of the 11th of September, 1855, was received by *189 the bank under those agreements, and that the bank sold it and received the proceeds. The cashier testified to these facts. Nor can there be any doubt that, at the contract prices, the lumber delivered and received amounted to $8,840.25. It was proved without an attempt at contradiction that, soon after the 14th of July, 1856, and after this amount of lumber had been delivered, and “ immediately on receipt of the letter of 14th of July, 1856,” by Pomeroy, that he notified the cashier of his wish to withdraw the note in suit. Pomeroy, therefore, did not acquiesce in the appropriation of the $8,840.25, which the bank, by the paper of July 14th, 1856, indicated a purpose to make, but on the contrary notified it, without delay, that this note must be given up. It was his right to make this requirement.
This view of the admissibility of the evidence under the pleadings, and of the meaning of the contracts adopted by the bank, even if not originally made by its authority, is an answer to all the exceptions taken to the admission or rejection of evidence.
As the bank took, and was to take the lumber at Potsdam, at a stipulated price; it was immaterial what was its net value in New York, or what was its actual value at Potsdam, or whether S. Austin sold it after it was delivered.
That Hewitt was the agent of the bank, was proved by its cashier, and although he testified that Hewitt was the agent of both parties, it was competent for the defendant to prove that Hewitt was not Pomeroy’s agent.
We think the evidence given presented a case not calling for the submission to the jury of any other questions of fact, than those embraced in the charge of the Judge, if it called for the submission of any question. The agreement between Pomeroy and the bank was made on the 12th of May, 1855, and the time for performing it was extended by the agreement of the 11th of September, 1855.
The communication from the cashier to Pomeroy of the 14th of July, 1856, represents that Hewitt (the bank’s agent) sent to the bank a statement dated November 15th, 1855, of lumber then delivered amounting to $8,840.25.
This communication concedes payment to that amount, and makes no suggestion that the $1,000 worth of lumber called for *190 by the extension agreement of the 11th of September, 1855, was not so delivered as to comply fully with that agreement.
As the original agreement only called for the delivery of $1,000 worth in July, 1855, and of $3,000 worth in August, 1855, and as the extension agreement of September 11, 1855, was given because Pomeroy could not perform the original contract according to its terms, and inasmuch as by the 15th of ¡November, 1855, $8,840.25 worth of lumber was delivered; the fact is clearly demonstrated that more than $1,000 worth was delivered between the 11th of September and the 15th of ¡November, 1855. The conditions of the agreement of the 11th of September, 1855, having been complied with, and the $8,840.25 worth of lumber having been delivered and accepted under the agreement of May 12,1855, as thus extended, it needed only the fact that Pomeroy should require the note in suit to be returned to him, to entitle the defendant to have it deemed paid; treating it as a note made for the accommodation of Pomeroy.
It being proved without contradiction that Pomeroy “immediately, on receipt of the letter of the 14th of July, 1856,” gave notice to the Cashier that he “wished to withdraw the note in suit; ” the defendant was entitled to an instruction that the request thus communicated and the receipt of the lumber, the delivery of which was acknowledged by that letter, entitled the defendant to a verdict, if none of the other securities had been withdrawn. There was no pretense that any others had been 'then withdrawn.
The fifth instruction, instead of being unjustly prejudicial to the plaintiffs, was more favorable than they had a right to claim, as it left the jury at liberty to find for the plaintiffs if other securities had been withdrawn when the order on the Bank was given, (June 22, 1857,) though they may not have been withdrawn when the verbal notice was given on or about July, 1856, unless this part of the charge can be construed as referring to the verbal and not to the written order to give up this note.
If the views stated are correct, neither of the first three nor the last request to charge was properly made.
There was nothing in the evidence to justify an instruction in accordance with the fourth request. It was so clearly proved that $1,000 worth of lumber was delivered in the fall of 1855, *191 subsequent to the 11th of September, that a verdict to the contrary would be manifestly against evidence. This view is an answer to the exception to charge as fifthly and seventhly requested.
If by the sixth request it was intended to insist that even if -the $1,000 worth of lumber was delivered within the time required by the agreement of the 11th of September, and if the amount of lumber delivered to and accepted by the Bank under the two agreements, exceeded in value the amount of the note in suit, the plaintiffs were entitled .to a verdict, although this note was an accommodation note and Pomeroy had required before this suit was brought that it should be returned to him; then an instruction was asked to which the plaintiffs were not entitled.
There could be no question on the evidence that the Bank received the lumber under the two agreements, and as performance of them to the extent of the price they agreed to pay for it. And there is no pretense that.they intimated, prior to bringing this suit, that they ceased to regard it as an open and subsisting contract.
Although, according to the evidence the Bank made an unprofitable contract with Pomeroy, yet the defendant’s equities are as strong as those of the Bank, and upon the written testimony and unconflicting evidence, and the fact determined by the jury, we think a defense to the note was established, and that no error was committed to the prejudice of the plaintiffs which entitles them to a new trial.
The judgment should be affirmed. Ordered accordingly.